UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA : 

     v.                    :        23-MJ-0070 (RMM)

CORBIN OLIVER GRAY    :

**DEFENDANT'S OPPOSITION
TO GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION**

    Pending before this Honorable Court is the government's request to detain Corbin Oliver Gray pre-trial, pursuant to 18 U.S.C. § 3142(f)(2)(B). Because there is no serious risk that Ms. Gray would obstruct or attempt to obstruct justice, or attempt to threaten, injure, or intimidate a prospective witness, and there is a combination of conditions of release that would reasonably assure Ms. Gray's appearance in court and the safety of the community, the government's request should be denied. Ms. Gray is a 20-year-old high school graduate with no prior convictions. Her father, who is a Lieutenant Commander with the United States Navy, is willing and able to act as a third-party custodian. Releasing Ms. Gray to the custody of her father with location monitoring under the Pretrial Services Agency's High Intensity Supervision Program (HISP) would reasonably assure the safety of the community and Ms. Gray's appearance in court. In opposition to the government's request, Ms. Gray, through undersigned counsel, respectfully submits the following.

**Procedural Background**

    On March 31, 2023, the government filed a criminal complaint charging that four months earlier, on November 29, 2022, Ms. Gray made threats in violation of 18 U.S.C. § 844(e) and § 875(c), and the Court issued an arrest warrant. Later that day, a detective with the Howard

County Police Department contacted Ms. Gray's mother and informed her that police in the District of Columbia wanted to speak with Ms. Gray. Ms. Gray's mother then contacted Ms. Gray's father and asked him to help Ms. Gray respond to that request. Ms. Gray then went to her father's house, and together, they called the detective back. A short time later, agents with the Federal Bureau of Investigation (FBI) called Ms. Gray's father and told him that Ms. Gray needed to meet them outside the house. After the FBI agents explained that they had a warrant, Ms. Gray and her father walked outside to meet the agents. Ms. Gray was then arrested and cooperated with the agents.

Ms. Gray was presented before the District of Columbia Superior Court on Saturday, April 1, 2023, and at the government's request, the court ordered her held without bond pending a detention hearing. Ms. Gray appeared before this Court on Monday, April 3, 2023, and at the government's request, the Court ordered a forensic screening and scheduled the detention hearing for April 6, 2023.

On April 5, 2023, a grand jury returned a two-count indictment in this matter. Count One charges that between on or about November 7, 2022, and on or about November 25, 2022, Ms. Gray made threats in or affecting interstate commerce, in violation of 18 U.S.C. § 844(e). Count Two charges that between on or about November 15, 2022, and on or about March 4, 2023, Ms. Gray made threats in interstate communications, in violation of 18 U.S.C. § 875(c).

## Argument

### I.     Competency

At Ms. Gray's initial appearance on April 3, 2023, pursuant to 18 U.S.C. § 4241(a), the government requested an evaluation to determine Ms. Gray's mental competency. The Court can order such an evaluation only "if there is reasonable cause to believe that the defendant may

presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.*

The government's request is not supported by any evidence or fact-based allegation that Ms. Gray is unable to understand the charges or assist in her defense. In contrast, undersigned counsel spoke with Ms. Gray about the charges both prior to the April 3rd hearing and again, at length, on April 5, 2023. Ms. Gray has a clear understanding of the charges and possible consequences. In addition, she has already begun assisting in her own defense. Undersigned counsel has no doubt that Ms. Gray is competent to proceed. *See United States v. Hines*, 694 F.3d 112, 121 (D.C. Cir. 2012) (defense attorney's view about competency is among the factors the court must consider when evaluating request for competency evaluation). Because there is no reasonable cause to believe that Ms. Gray is unable to understand the nature and consequences of the proceedings against her or to assist in her defense, the government's request should be denied.

**II.     Detention**

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999)

("Detention until trial is relatively difficult to impose."). Generally, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

Here, the government argues that there is a serious risk that Ms. Gray would obstruct or attempt to obstruct justice, or attempt to threaten, injure, or intimidate a prospective witness. The evidence does not support this argument. In determining whether pre-trial detention is necessary the Court must consider the nature and circumstances of the charged offenses, the weight of the evidence, the nature and seriousness of the danger to any person or the community that could be posed by Ms. Gray's release, and the history and characteristics of Ms. Gray. *See* 18 U.S.C. § 3142(g). A review of these factors demonstrates that releasing Ms. Gray to live with her father, with home detention and location monitoring pursuant to HISP, will reasonably ensure both the safety of the community and Mr. Gray's appearance in court.

### A. Nature and Circumstances of the Offense and Weight of the Evidence

In seeking detention, the government relies on the nature of the charges, but the allegations submitted by the government demonstrate that Ms. Gray is not a threat. First, Ms. Gray did not state that she was going to harm anyone. In order to prove a threat was made, the government will have to prove that Ms. Gray transmitted "a communication for the purpose of issuing a threat, or with knowledge that the communication [would] be viewed as a threat." *See Elonis v. United States*, 575 U.S. 739, 740 (2015). The government will not be able to do so, because Ms. Gray did not do so.

The charges in this case stem from Ms. Gray's alleged support of a community of autistic

4

people who are opposed to Applied Behavior Analysis ("ABA") therapy. The government alleges that Ms. Gray's rhetoric in support of these views rose to the level of threats. The evidence does not support these claims and does not support the government's broad claims that Ms. Gray "made violent calls to action" or "selected a target date for when the Autism Speaks with (sic) be overrun by violent means." Government's Memorandum in Support of Pre-Trail Detention ("Gov't Memo.") at 13. These claims appear to be based on the following posts which government counsel provided to undersigned counsel:



Even assuming that Ms. Gray made these posts, they clearly do not state that Ms. Gray "selected a target date" or made any "call to action." The post repeats what someone else "informed" would happen by a particular date (April 4, 2023)—this was the repeating of a prediction, not a "select[ion] of a target date" or a "call to action."

The specific charges also do not support the government's detention request. Count One of the indictment charges that on November 7, 2022 and November 25, 2022, Ms. Gray made threats to destroy the Autism Speaks building in the District of Columbia. The Gov't Memo. is unclear as to what precisely are the charged threats, but the only information provided thus far to undersigned counsel regarding those dates are the posts copied above (apparently posted on November 7), and the following posts:



[address redacted]

Again, even assuming that Ms. Gray made these posts, they do not state that she planning to do anything, violent or otherwise. The post dated November 7th repeated what someone else said would happen, and the post dated November 25th refers to a "prophecy" and says "I'm not advocating for this."

Count Two of the indictment charges that on November 15, 2022 and on March 4, 2023, Ms. Gray threatened to execute all Board Certified Behavior Analysts and the leadership of Autism Speaks. The November 15, 2022 allegation apparently is based on the claim that Ms. Gray posted a flyer at the D.C. headquarters of Autism Speaks stating an "ambition" of Autistic Nationalism to "imprison and execute" those who practiced ABA therapy. The flyer did not say or threaten that Ms. Gray was going to do this.

The government does not describe what the March 4, 2023 alleged threat charged in Count Two was, noting only that there was "an incident" at the Howard County College campus involving "anti-ABA rhetoric" on that date. Without stating what threat was allegedly made on that date, the government claims that this "confrontation" demonstrates Ms. Gray's "willingness to follow through on such threats." Gov't Memo at 13. The opposite is true. Putting aside that the government does not even proffer the words allegedly used on that date, Ms. Gray did not commit any violence against anyone while expressing her views on that date or any other date,

6

nor was she arrested on that date.[1]

The government claims that Ms. Gray "has taken physical actionable steps against supporters and providers of ABA," but describes no such "physical actionable steps." The government points to the allegations that Ms. Gray unlawfully entered the Autism Speaks offices on or about November 15, 2023 and taped the flyer regarding the "ambitions" of Autistic Nationalism—the flyer that is the subject of Count Two—to the wall in the lobby of the building where those officers are located. Significantly, however, even if true, Ms. Gray did no physical harm to any person—or any property—while inside the building.

The government notes that in November 2022, Ms. Gray entered the Linwood School in Maryland, but when she was told to leave the school, she did. She then placed flyers on cars outside, but did nothing to cause physical harm to anyone. The same is true of the allegation that Ms. Gray entered the Autism Speaks building on February 28, 2023—she was told to leave and left. The government claims that she "reengaged with officers" before leaving. Gov't Memo. at 15. That is an unwarranted, exaggerated and nefarious description of what happened—in fact, she turned around and asked the officers a question, and she left when the officers told her she had to leave. Moreover, she is not charged with any offense arising out of that encounter—because she committed no offense.

The government claims that Ms. Gray threatened harm to Autism Speaks on April 4, 2023, but the post the government provided to undersigned counsel and copied above belies the claim that Ms. Gray was threatening to do harm. The post—made *five* months ago—merely

---

[1] The government claims that Ms. Gray's car was "abandoned" in the campus parking lot for several days after March 4th. The car, however, was not abandoned. It broke down in the lot and would not start. It took some time before Ms. Gray and her family to arrange for the car to be towed, but the car was not "abandoned."

7

repeated what someone else predicted would occur "by April 4th, 2023," and more importantly, Ms. Gray took no action toward carrying out those predictions.

The government claims that Ms. Gray uses provocative imagery in posts regarding anti-ABA views, but provocative posts are not threats. Ms. Gray does not possess any firearms and has never been accused of possessing any weapons. The government points to scissors found when Ms. Gray allegedly entered the Autism Speaks building on February 28th, but there is no evidence she used those scissor to do anything other than cut tape to post flyers. In fact, the police searched the bag in the photos submitted by the government and found no weapons.

### B. Potential Danger to Any Person or the Community

The allegations against Ms. Gray occurred between a month and nearly five months prior to her arrest and there is no evidence that Ms. Gray took any action toward committing any physical violence against any person. Nonetheless, the government argues that now—after her arrest and detention for nearly a week—she would be a danger to others if released. The evidence does not support this claim. Although Ms. Gray may have exhibited strong support for anti-ABA views, she has never committed any violent behavior against anyone.

The government argument in this case is similar to the argument rejected by the D.C. Circuit in *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021). In *Munchel*, the Court rejected the argument that a dangerous determination could be based on a finding that the defendants were willing to use force to promote political ends, when the evidence demonstrated that the defendants had in fact used no violence during the commission of the offense—that is they did not commit any vandalize or physical harm to any person when entering the Capitol unlawfully on January 6, 2020. Similarly, Ms. Gray has committed no violence, and there is no evidence that she would do so while on pre-trial release. *See id.* at 1285 (Katsas, J. concurring in

8

part and dissenting in part) (detention turns on "specific, forward-looking assessment of whether [the defendant] currently pose[s] an unmitigable threat to public safety").

### C. History and Characteristics of Ms. Gray

Ms. Gray has no prior criminal convictions. She is just 20 years old and grew up in Maryland. At the age of three, she was diagnosed with autism, which presented some challenges, but she is graduated from high school in 2021. She then began taking courses at Howard Community College, while continuing to live at home with her mother. Her parents are divorced, but shared custody as she was growing up. She remains close with both parents. Recently, she enrolled with the Howard County Pathfinders program, which provides employment assists to persons with autism.

Finally, the government asks the Court to hold Ms. Gray's prior mental health treatment against her. The Court should decline to do so, and counsel can proffer additional information at the detention hearing.

## Conclusion

Ms. Gray respectfully moves this Honorable Court to deny the government's request for pre-trial detention and release Ms. Gray to the third-party custody of her father, on the condition that she participate in the HISP program, with location monitoring. The allegations at issue here occurred months prior to Ms. Gray's arrest. Ms. Gray has never taken any violent action against anyone. She has no prior convictions and no history of violence. The conditions proposed are sufficient to reasonably assure her appearance in court and the safety of the community.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500

10